Good morning, Your Honors. Jan Norman on behalf of the Appellant Bruce Senator. As I reviewed the transcripts in this trial, it became very obvious that the defendant, who appeared prosaic, often gave confusing and dubious statements supporting the conspiracy theory. It was a long trial. I'm sure it was difficult for everyone in the courtroom to listen to some of the comments that Mr. Senator made. Nevertheless, he deserved a fair trial on both of the counts in which he was actually convicted, and he did not receive it. The prosecution denied his right to a fair trial by improperly vouching for the credibility of the two judges. Well, why don't we jump to that from the standpoint, just delve in there. Obviously, Mr. Senator put credibility front and center at issue in terms of his challenge to saying that they weren't really afraid and all of, you know, that the jury had to decide, okay, were the judges really afraid, even though they testified to that or not. And so why wasn't the statements that were made, it wasn't saying, believe me, because I know these judges. It was like, okay, any time in a credibility case, there's an instruction that comes forth, and they say, okay, you can look to a number of factors to decide who's telling the truth. And some of those factors can be if a person has a prior conviction for a felony, some of those factors can be what would their interests be, you know, are they, say, someone standing on the corner and they don't know any of the people and they're a witness, it would not be unheard of for someone to say, why would this person come to court and say that when they don't know either person? So why was it more than that? Because what the prosecutor did was he took the position of these two witnesses against Mr. Senator to say, believe them, not because of their credibility, not because they're judges, and because they're judges, because they're administrative law judges, they are to be believed. But isn't the issue of vouching when the prosecutor places himself in the position of authority and vouches for the judge? So wouldn't we need one step further for the prosecutor to say along the lines of, trust me, I know that they're good judges. These are judges who have a clean record. You know, we need the prosecutor to insert himself into the equation to make it a vouching situation. Well, part of the problem I'm facing right now is that the district court judge accepted that it was vouching and the respondent didn't argue it was not vouching. So part of my problem is I really didn't fully address whether or not it was vouching. But I don't, I think in this case... So far everyone's agreed it was vouching, but they've just found it harmless. Correct, Your Honor. When the prosecutor says, and I'll quote, as far as you as jurors are concerned, what they say goes. If they said it happened, it happened. If Judge Whiteley comes in or Judge Delaterre comes in here and tells you X happened, it happened. And you know that. And there's no other way to view the evidence. He doesn't have to say, I believe. What he's saying to the jurors is that these people are unquestionable. There is no credibility issue. Not because they're honest judges or honest people, but because they are judges. Let me ask you this. Was there a dispute as to what, did Mr. Senator deny saying what the judges said he said? With regard to Judge Whiteley, yes. His defense was that Judge Whiteley had not remembered the conversation correctly. In fact, I believe that Mr. Senator recalled the conversation that occurred on June 6th differently. And so what the defense was that Judge Whiteley had remembered a quote from the affidavit that Mr. Senator had submitted. And in fact, when he cross-examined Judge Whiteley, he asked, well, aren't you remembering the affidavit and not what was actually said on June 6th in the courtroom? Okay, but the affidavits ever, that's not disputed, right? I mean, in terms of that was entered in, that was in evidence? Yes, that was in evidence. Okay. So wasn't Mr. Senator challenging whether that, I'm assuming the injury instruction is just because I say I'm afraid, that's not enough. There has to be, there's some sort of, it's not entirely subjective. Isn't there an objective standard for that a reasonable person would have been scared by what he said? Well, he... No, I mean, it's sort of like if I look at you like this, okay, and you say, oh, I'm really scared. That doesn't necessarily, that wouldn't satisfy it unless every reasonable person that gave you, you know, I'm kind of narrowing my eyes and looking at you. I mean, can a person just say, is it enough that they say I was afraid? Yes, Your Honor. I don't think we're in this... Well, what does the instruction say on the crime? It's not just... It does say they have to be... I know, but is that a subjective standard or is it an objective standard? The jury had to be instructed on something on that, and I don't think... I believe it's an objective standard. So that's different. But that wasn't the issue that the vouching went to. The vouching didn't go to whether or not the judges could have or would have been afraid. The vouching went to what judges actually said. So you've got two arguments going on here. You've got my argument that on the uncertified, the claim not granted the certificate of appealability... Because we're getting low on time, I need to ask you about your uncertified. You raised a claim not included in the certificate of appealability, which is that Mr. Senator's ineffective assistance by failing to argue sufficiency of the evidence on direct appeal. Did Mr. Senator raise that specific claim before the district court? Yes. Where? He raised an ineffective assistance of counsel claim at, I believe it was... It's referenced in the report at page 15, the report... But it was as to, like, the 22 claims or something. It wasn't as to sufficiency of the evidence, was it? He did raise a claim that there was insufficient evidence. And unfortunately, I can't remember right off the bat right now. Aren't you talking about the ineffective assistance of counsel claim? Yes. The district court ruled on that on page 50, in its opinion. And ruled that it lacked merit. Yeah. Okay. Your briefs don't cite Strickland v. Washington or discuss the standard for ineffective assistance of counsel at all. How can we find that you have shown that a reasonable jurist would debate whether Mr. Senator's counsel gave ineffective assistance when you haven't briefed the issue? Well, first of all, he represented himself. So it's not trial counsel. It's appellate counsel. And my argument is there was no evidence to support that Mr. Senator directly threatened Judge Delaterre. And I laid out the elements and I laid out the evidence. And it's clear that the threat was written by Mr. Senator to his lawyers. The lawyer's email was intercepted by the FBI. And then they sent it to the judge. Well your issue, the way you're getting it before us is that under the vouching that the district court held and certified, first you determine whether there's vouching. Then you determine whether the weight of the evidence was sufficient, right? Because if the weight of the evidence is overwhelming, the vouching is harmless. If the weight of the evidence is insufficient, then the vouching is harmful and you have error. Isn't that really the analysis? Yes. I argue that under the evidence was not strong to as evidence that the vouching was harmful. The evidence wasn't strong. The jury deliberated for a lengthy period, asked for three facts. So yes, it comes up both in that context, but also as a separate claim. So vouching comes in two different ways. The first way, the way I mentioned to you. And then the second way, which is that the prosecutor has some kind of inside information that the other parties wouldn't have. So the statement that you mentioned is really the first kind of vouching. The second is when the prosecutor says something along the lines of, they are, I forget the exact statement, they're impeccable or their record is, right? Something like that. So as if he had some inside information. So which of the two did the district court judge rely on? Do you know? I believe that the judge relied on the statements such as the one I just gave you. Okay. All right. So then it's your position that because the judge relied on that found vouching, the judge is in error because it's not harmless vouching because it's evidence was not sufficient because there was no evidence of direct threats. Correct. Okay. Okay. Okay. Now I have a question for you. The district court didn't reach the procedural default. The district court didn't reach the procedural default because he elected to roll on the merits. What's your position as to whether or not these claims were either, both claims were procedurally defaulted? I can't really answer that question, Your Honor. I did not look at whether or not, I know that they, that the court, the district court reviewed it de novo because the California Supreme Court had denied them on procedural grounds. I thought he did it because the California Supreme Court didn't roll on the issues. Well, because they denied it on procedural grounds, the California Supreme Court did not rule on the merits. Was that the last reasoned decision, the California Supreme Court decision? No. I think we were looking at the fourth appellate district opinion as the last reasoned decision, and that court didn't address it. And that's why the district court reviewed it de novo. All right, Your Honor. I don't, I thought it was because the California Supreme Court had denied it on procedural grounds. If I'm mistaken, I apologize. That wasn't a reasoned decision. We have to look at the last reasoned decision of the court. But that's all right. That's all right. You're over your time. Thank you very much. May it please the court, Daniel Rogers, Deputy Attorney General for Respondent. Can I just ask you real quick, you didn't raise procedural default as an argument. What's the reason for that? So if that exists, is that waived? I don't know that it's waived. It was raised in the district court. But you didn't raise it to us. Correct. I don't know that I have a good reason for that other than this case was seen during easier to decide on the merits rather than reaching the procedural bar issue. Well, but since you didn't raise it, our role is that you waived it as an argument. So I'm just trying to go through what arguments are exactly before us and what aren't. I think the issue before the court is primarily prejudice. Right. Okay. So why don't you tell us why? Why don't you tell us why this, assuming that there was prosecutorial misconduct, why it was harmless? All right, Your Honor. In this case and in our briefing, we distill from the case law five factors that the court can look to. The existence of the curative instructions and the instructions in this case clearly informed the jury that they, and not the prosecutor, were the arbiter of credibility. Right, but that wasn't a curative instruction because there was no objection, right? There was no objection. It was not... It was part of the general instructions. It was part of the general instructions. General instructions are always given. That's not necessarily what a curative instruction is. Okay, so what I'm really interested in is the evidence. Why was the evidence so overwhelming as to not be contrary to the Brex standard? The evidence was overwhelming for a number of reasons. Number one, the defendant had done this before. This was a pattern of conduct. That wasn't presented to the jury, right? What was presented to the jury were the three threats, and they were all charged as direct threats. And oddly, you had the other statute charged originally and dismissed those counts before trial, all of which would have sufficed under the indirect threat. So the fact that he had done it before wasn't presented to the jury. We have to look... So in the analysis, first of all, for procedural default, you'd agree with me, wouldn't you, that ineffective assistance of appellate counsel is one way to get around procedural default, right? The judge, however, certified the issue of the vouching. So now we're in this path of vouching, and we have to look to the weight of the evidence. So we have three threats, and the first one is... And it's a direct threat, and it was a package given to his lawyer that was then provided to the FBI. How is that strong evidence? Well, Your Honor, under Zendejas, the threat... Communication through a third party can satisfy California statute regarding direct threats. Right, and that's usually in a situation like where it's going to the secretary, and the secretary says, I got a call, judge. Here's what was said on the call. But this was conveyed to a lawyer, essentially in the auspices of getting legal advice, right? Well, this was essentially a criminal act that was conveyed to an attorney. At that point, there was no expectation that that is not going to reach the judges. Well, so your theory is that there is an expectation that the defendant, when he conveyed that to his attorneys, assumes that it would get to the judge? He either assumes or he either knows or should know that it should get to the judge. Well, that would have worked in one of the counts that you dismissed. But in this count, it's supposed to be direct. But again, under Zendejas, direct can be through an intermediary. So this isn't like the defendant's throat is... Okay, so you're arguing sufficiency there. But when you talk to prejudice, it's the weight of the evidence. I think that's what Judge Kendall's asking you about. So now, he did do this prior, and he was impeached with his felony, but you didn't introduce the prior threat to another judge, right? No, not the prior threat. The jury didn't hear that. So when we evaluate, are you conceding vouching? I'm not conceding vouching. We argued in the district court that the California... Are you conceding vouching here? No. I thought you conceded vouching at the district court level. We're conceding that this is a close enough case that we're not going to say the district court was clearly wrong about the vouching. So I think... That's a legal conclusion. That's a question of law, or at least it's a mixed question. It's definitely a question of law when the district court found. And you're not arguing that he was wrong as a mayor of law? We have not made that argument in this court. Okay. So essentially, yes, you're conceding vouching. So that's why we're all interested in what the evidence was and why it was so strong as to render the impermissible vouching harmless under BRICT. And Your Honor, and forgive me, maybe I'm having trouble separating the sufficiency issue from the weight of the evidence. It seems to me... When you talk about the weight of the evidence, you say, what is all the evidence that shows that the defendant is guilty? The evidence is the threat that was communicated to the FBI as to Judge Delator. Secondly, there are the additional threats that were made after that to the attorneys that inform his state of mind as to that earlier one. And then as to Judge Whiteley, the evidence is that the threat that Judge Whiteley testified that he heard, and Judge Whiteley was specifically asked on cross-examination if he could have been confused and indicated that he was not. That threat is consistent in tone and type with the other threats. It's consistent with the... But again, did the other threats come in? The threat against Judge Delator came in, and the affidavit that was later filed. Okay. So it was the threat and the affidavit. Yes. And the affidavit that was filed was actually heard by another judge, right? So again, the question of whether it was a direct threat to the judge hearing the case is... But the affidavit supports Judge Delator's version of what happened in that courtroom. So in this case, when you look at all of the threats in total, that's the threat. That constellation of threats informs how one considers... But that's not how we look at sufficiency of evidence. We look at a charge, we look at the elements, and we look at whether the evidence was sufficient to support the charge and the conviction beyond a reasonable doubt. Well, I think in fairness to counsel on this, I asked him to address harmlessness, and I think that's a different issue. I think that's a different issue. Well, and, Your Honor, as to sufficient evidence, in terms of... And is the element that Your Honor is focusing on the... The directness. The directness. I'll give you that in the Whitley one, it was direct because he's there. Yes. Right? It's the other two counts. I would say that... Well, in the other two counts, the count as to Judge Delator, the count as to Judge Delator involving the threat that was communicated through the FBI, I would say in a sufficiency argument, I would say, first of all, that California defines the Zendejas case. What this Court has to essentially inform its analysis of that element is the Zendejas case. The Zendejas case indicates that a threat can be communicated through a third party. Zendejas is not 100 percent on point. Zendejas involved a threat left on an answering machine and a threat that was communicated to a transit employee. But, again, we would say that this case is enough like Zendejas that this Court, conducting that deferential review, relying on the State Court and State Court's analysis of the elements of Penal Code Section 71, that Zendejas is close enough to satisfy a sufficiency of the evidence standard. Well, in your view, is sufficiency of the evidence before the Court? No, it's not. In my view, there's some overlap because we're talking about the strength of the evidence. So, conceptually, there's some overlap. But the discrete legal question of sufficiency of the evidence is not one of the certified issues. But what is before us is whether or not to expand the COA to cover ineffective assistance of appellate counsel because he failed to make a sufficiency argument and we have to decide whether that's reasonably debatable among jurors, whether that raises a constitutional issue. So to make that decision, we have to look at whether the evidence was sufficient as to either count. So that's why Judge Kendall is asking this question. Yes. So cutting to it, so as to Whiteley, Judge Whiteley, there was an actual direct threat, right? Yes. No third party. That's to his face in a settlement conference or something, right? Okay. As to De La Torre, it was to his lawyer who took it to the FBI who then informed De La Torre. And the question is, why is that a direct threat? What evidence supports that that's a direct threat and what law would say that it is? The law that we have is Zendejas. Okay. The law that we have is Zendejas. The, my argument would be that in the case of Judge De La Torre, if I make a threat, a criminal threat to an attorney, an officer of the court. But your own attorney. My own attorney. Okay. But an officer of the court. It is, I should know that there is a direct threat. That there is an excellent chance that that information may go to the court. I may, I may want the attorney, there's no evidence of this, I'm speculating at this point, but I may want the attorney to do that. I mean, if, if I tell my attorney that I'm going to do that, I should certainly expect that there will be someone waiting for me when I arrive in court. That attorney is not going to hear that threat, you know, future criminality and simply sit on his or her hands. In fact, the attorney does have a duty, right? I believe so, yes. Was that threat ever shown, the letter, ever shown to the jury? The, the actual letter that was sent to the attorney? No. I do not believe it was. Is it in the record? I do not believe it is in the record. I think the e-mail from the FBI is what was, what was shown. And we, as the court knows, we had attempted to obtain that. Yeah, we wanted to see the e-mail because that's the center of the case. And of course, nobody can find the e-mail, which is rather odd. Your Honor, there are California rules regarding California statutes that are cited in those minutes that we provided that... Well, was the e-mail introduced into evidence? It was Exhibit 1. Exhibit 1. And you don't preserve the evidence? I don't recall the specifics of that statute. I think it's 1471. I'm not... But you just told me that it was not presented to the jury. The e-mail was presented. The actual, the e-mail from the FBI was presented. Not the e-mail... But not Mr. Senator's threat in the letter that was turned over to his attorney, which his attorney then contacted the FBI regarding. And then the e-mail from the FBI was what the jury heard? Yes. Okay. And that's what I believe, pursuant to statute, is no longer available. Okay. I don't know what happened to the actual, whatever was provided to the FBI or whatever the FBI obtained. So unless the Court has additional questions... Yeah. Thank you. You've gone over your time, so I'll give you a couple minutes, Ms. Norman. Maybe you can clarify some of this. First, I'd like to correct what seems to be a misimpression. The attorney did not turn over the e-mail. How did they get it? They intercepted it. The FBI was doing, you know, one of these random looking at e-mails for potentially harmful information, and they came across this So in what kind of interception? I saw that term used throughout the briefs, but nowhere in the record. The FBI agent who testified never explained why or how it was intercepted. I'm assuming it was that the FBI was randomly looking at e-mail, because they saw this e-mail from Senator to his attorney. They then wrote an e-mail to the judge and quoted from the e-mail that was going from Senator to his attorney. And when did that happen? Pretty simultaneous. Well, the date that they sent the... I don't know what date the e-mail was originally from Senator to his attorney was dated. I don't think that... I'm not sure that was even in the record. If it is, it was the same day that the FBI sent it to the judge, which was April 6th, I believe. Close to that. It was in April of 2006. And I do not know how they intercepted it. But I would say that clearly, Mr. Senator, when he sent the e-mail to his attorney, did not intend for the FBI to intercept it and send it to the judge. So on that grounds, this is not like Zanatus, because the threats that were made in Zanatus were directly made to a direct staff member. And when he made the calls, he said, tell... I can't remember what his name was. Tell so-and-so that I'm going to come and do him harm. This is clearly different. And the attorney never called for security or reported that or anything like that? No. So it just came in independently through this surreptitious... Yes. It came in when the FBI intercepted it and sent it to the judge. Well, you don't really... Do you really know that? You just... You basically said, I'm assuming the FBI found it that way. You don't really know how... I don't know how they actually intercepted it. I'm telling you that the FBI agent testified at trial that they had intercepted this message. There was nothing in the record to indicate how they intercepted the message. Okay. So we have to go by the record then, whatever the record says on that. Correct. Okay. Thank you. All right. Do you have any further questions? No, nothing. Thank you. I think there probably is nothing more for me to say unless the judges have any further questions. No, thank you. So we will submit Senator B. Sentman.
judges: Wardlaw, Callahan, Kendall